IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Michael Gilstrap, #13717-171, ) | |
| ) | Civil Action No. 6:09-484-MBS-WMC |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Federal Bureau of Prisons, ) | |
| M. M. Mitchell, Warden, ) | |
| ) | |
| Respondents. ) | |
| ) | |

The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The record reveals that the petitioner was sentenced on January 24, 2007, to a 46-month term of imprisonment by the United States District Court for the District of South Carolina, for conspiracy to possess with intent to distribute and distribution of 500 grams or more of cocaine, in violation of 21 U.S.C. § 846. The petitioner is currently incarcerated at the Federal Correctional Institution ("FCI") Edgefield, South Carolina, and has a projected release date of October 6, 2010, via Good Conduct Time ("GCT") release.

On June 25, 2008, the petitioner began participation in the Residential Drug Abuse Program ("RDAP"). The RDAP is an intensive 500-hour program of drug treatment that takes place in a residential setting apart from the general prison population. There are

a variety of incentives available to inmates who complete the RDAP, including consideration for early release pursuant to 18 U.S.C. § 3621(e)(2)(B). On or about August 1, 2008, the petitioner inquired as to whether he was eligible for the early release benefit, should he successfully complete the RDAP. The petitioner was informed by the RDAP Coordinator that his offense of conviction, which includes a two-level enhancement for possession of a weapon, would preclude him for consideration for the early release benefit. The petitioner challenges the Bureau of Prisons ("BOP") determination that he is not eligible for the early release benefit available to those inmates who successfully complete the RDAP.

The respondents in this petition are the Federal Bureau of Prisons, and Mary M. Mitchell, the Warden at FCI Edgefield. On May 26, 2009, the respondents filed a motion for summary judgment. By order filed May 27, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his opposition to the motion on June 12, 2009.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

(1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

As part of the Violent Crime Control and Law Enforcement Act ("VCCLEA") of 1994, Congress granted the Director of the BOP the discretion to grant early release to prisoners who successfully complete a residential drug treatment program. *See* 18 U.S.C. § 3621(e)(2)(B)2. In order to implement this Congressional grant of discretion, the BOP promulgated regulations that define the process for early release consideration and the

categorical exercise of discretion to deny such consideration in certain situations. *See* 28 C.F.R. § 550.58. These regulations were initially promulgated in 1995 and were the subject of much litigation. In 1997, the BOP promulgated new regulations that excludes those inmates from eligibility for early release "whose current offense is a felony" that "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives." *See* 28 C.F.R. § 550.58(a)(1)(vi)(B).

The BOP adopted Program Statement No. 5162.04, "Categorization of Offenses" in October 1997 (resp. m.s.j., ex. 3, Program Statement 5162.04). This Program Statement includes a list of offenses that the agency considers to be "crimes of violence." Section 7 identifies other offenses that "at the Director's discretion shall preclude an inmate's receiving certain bureau program benefits. *Id.* pp. 8-9. In section 7(b), the BOP lists a group of offenses that may preclude early release consideration because they involved the use or threatened use of force. *Id.* pp. 11-15. One of these offenses is 21 U.S.C. § 846. *Id.* p. 14. Thus, under Program Statement No. 5162.04, an inmate convicted of violating 21 U.S.C. § 846, such as the petitioner, may be precluded from early release if the court applied a two-level enhancement due to the possession of a firearm. *Id.* p. 12.

Three years later, on December 22, 2000, the BOP replaced the 1997 interim regulation found at 28 C.F.R. § 550.58 with a final regulation, which adopted the 1997 interim regulation without change. *See* 65 Fed. Reg. 80,745. The final regulation was effective as of December 22, 2000. *Id.* Effective March 16, 2009, the BOP adopted a new version of the regulation in issue, codified at 28 C.F.R. § 550.55, which largely mirrors the former version codified at § 550.58. Program Statement 5162.04 remained in effect until March 16, 2009. On March 16, 2009, Program Statement 5162.04 was rescinded and replaced with Program Statement 5162.05 (resp. m.s.j., ex. 4, Program Statement 5162.05). The reissuance of this policy updated the lists of statutory offenses. *Id.*

The RDAP is a rigorous long-term program for drug treatment with three separate and mandatory components: a unit-based treatment phase, consisting of six to twelve months (with a minimum of 500 hours) of treatment in a unit separate from the general prison population; an institution transition phase, consisting of treatment and participation for a minimum of one hour a month over a twelve-month period (when the inmate's sentence allows); and a community transitional phase, lasting up to six months when the inmate is transferred to a community corrections center. *See* 28 C.F.R. §§ 550.53, 550.56.

On June 25, 2008, the petitioner began participation in the RDAP. On or about August 1, 2008, the petitioner inquired as to whether he was eligible for the early release benefit, should he successfully complete the RDAP. The petitioner was informed by the RDAP Coordinator that his offense of conviction, which includes a two-level enhancement for possession of a weapon, would preclude him for consideration for the early release benefit (resp. m.s.j., ex. 2, Tammara Bryan decl.). According to the petitioner's opposition to the motion for summary judgment, he successfully completed the RDAP on May 15, 2009 (pet. resp. m.s.j. at 2).

The petitioner contends the BOP policy categorically excluding from early release consideration prisoners who have a sentence enhancement for possession of a weapon is contrary to the unambiguous language contained in 18 U.S.C. § 3621(e)(2)(B). He attempts to support his argument by asserting that Section 3621(e)(2)(B) does not provide a definition for "nonviolent offense" and that the BOP's definition of a "crime of violence" in promulgating Program Statement 5162.04 is an abuse of discretion. The petitioner asserts a more plausible definition of a "crime of violence" is set forth in 18 U.S.C. § 16, United States Sentencing Guideline § 2L1.2, and *United States v. Gomez-Leon*, 545 F.3d 777, 787 (9th Cir. 2008), and that under those definitions, no proper foundation exits to

5

find that the sentencing enhancement he received qualifies as a violent offense excluding him from early release.

In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Supreme Court announced the now well-known rule that where Congress has not spoken directly to the precise interpretation of a statutory provision administered by an agency, a reviewing court will give the agency's regulations that elucidate the ambiguous statutory provision "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute," that is, as long as the agency's construction is "reasonable." *See McDaniels v. United States*, 300 F.3d 407, 411 (4th Cir. 2002) (explaining the *Chevron* doctrine). Further, the Administrative Procedures Act ("APA") general judicial review provision, 5 U.S.C. § 706, authorizes a court to "set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Supreme Court has explained that the scope of review under § 706(2)(A)'s "arbitrary and capricious" standard is "narrow," and that "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983). Still, § 706(2)(A) requires the agency to "cogently explain why it has exercised it discretion in a given manner" – i.e., the agency must engage in "reasoned decisionmaking." *Id.* at 48, 52. Although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given[, a court] will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 43 (citations omitted). In short, judicial review pursuant to § 706(2)(A) is highly deferential. As the D.C. Circuit has explained, "[the] inquiry at the second step of *Chevron*, i.e., whether an ambiguous statute has been interpreted reasonably, overlaps with the [APA's] arbitrary and capricious standard, for whether a statue is unreasonably interpreted is close analytically to

the issue whether an agency's actions under a statute are unreasonable." *Shays v. FEC*, 414 F.3d 76, 96-97 (D.C. Cir. 2005) (citations omitted).

With this standard of review in mind, the petitioner's claim fails. The substance[1] of the current regulation has been upheld by the United States Supreme Court. *See Lopez v. Davis*, 531 U.S. 230, 233 (2001). In *Lopez*, an inmate challenged the BOP's determination that he was not eligible for early release based upon his conviction under 21 U.S.C. § 841, to which a two-point specific offense characteristic ("SOC") enhancement for possessing a firearm had been applied. *Lopez*, 531 U.S. at 236-37. The Court held that the BOP's regulation was a permissible construction of the statute and that the BOP had the discretion to categorically deny early release to felons whose offenses involved the "carrying, possession, or use of a firearm." *Lopez*, 531 U.S. at 242. The Court reasoned that 28 C.F.R. § 550.58 was permissible because, in promulgating that regulation, the Bureau had reasonably concluded that an inmate's involvement with firearms in connection with the commission of a felony suggested a readiness to resort to life-endangering violence. *Id.* at 244. "When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." *Id.* at 241. The Court specifically rejected the contention that the statute required individualized assessment and held that 28 C.F.R. § 550.58 was reasonable. *Id.* at 244.

The petitioner, relying on *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008), argues that the regulation was improperly promulgated under the APA (petition at 6). The Court in *Lopez* did not address this issue. *See Lopez*, 531 U.S. at 244 n. 6. The Ninth Circuit Court of Appeals in *Arrington v. Daniels* did reach the issue an concluded that the regulation was improperly promulgated under the APA. Essentially, the Ninth Circuit found

---

[1] *Lopez* considered the 1997 interim regulation, which was replaced on December 22, 2000, with a final regulation that adopted the 1997 interim regulation without change. *See* 65 Fed.Reg. 80,745.

7

that, although the rule adopted by BOP was reasonable in substance, it nevertheless failed APA review because the BOP failed to "comply with its procedural responsibility to articulate in the administrative record the rational basis upon which it relied in promulgating the rule." *Arrington*, 516 F.3d at 1115. However, *Arrington* is not binding in this circuit. The Fourth Circuit has not adopted the Ninth Circuit's technical requirement that the basis for an agency's decision be expressly and fully explained in the administrative record of the promulgation of its regulation. Rather, in reviewing agency action, the Fourth Circuit requires that the agency's rationale for its decision be reasonably discernible. *See 1000 Friends of Maryland v. Browner*, 265 F.3d 216, 238 (4th Cir. 2001) ("While an 'agency must examine the relevant data and articulate a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made,' courts will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'") (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). Further, the majority of district courts that have addressed the issue have declined to follow *Arrington*. *See, e.g. Hicks v. Federal Bureau of Prisons*, 603 F.Supp.2d 835, 839 (D.S.C. 2009).

In promulgating the newly effective version of Section 550.55, the BOP explicitly stated that it excluded inmates convicted of offenses involving carrying, possession, or use of a firearm from early release consideration because these inmates pose a safety risk to the public:

> Under 18 U.S.C. 3621(e), the Bureau has the discretion to determine eligibility for early release consideration (*See Lopez v. Davis*, 531 U.S. 230 (2001)). The Director of the Bureau exercises discretion to deny early release eligibility to inmates who have a felony conviction for the offenses listed in § 550.55(b)(5)(i)-(iv) because commission of such offenses illustrates a readiness to endanger the public. Denial of early release to all inmates convicted of these offenses rationally reflects the view that, in committing such offenses, these inmates displayed a readiness to endanger another's life.
>
> The Director of the Bureau, in his discretion, chooses to preclude from early release consideration inmates convicted of

8

offenses involving carrying, possession or use of a firearm and offenses that present a serious risk of physical force against person or property, as described in § 550.55(b)(5)(ii) and (iii). Further, in the correctional experience of the Bureau, the offense conduct of both armed offenders and certain recidivists suggests that they pose a particular risk to the public. There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in *Lopez v. Davis*, "denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." *Id.* at 240. The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.

It is important to note that these inmates are not precluded from participating in the drug abuse treatment program. However, these inmates are not eligible for early release consideration because the specified elements of these offenses pose a significant threat of dangerousness or violent behavior to the public. This threat presents a potential safety risk to the public if inmates who have demonstrated such behavior are released to the community prematurely. Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the court deemed appropriate to impose.

74 Fed. Reg. 1892, 1895 (Jan. 14. 2009).

Based upon the foregoing, the BOP's rationale for its exclusion from early release consideration those prisoners, like the petitioner, who have a sentence enhancement for possession of a weapon is "readily discernible" and thus does not violate the APA.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the respondents' motion for summary judgment (doc. 16) be granted.

October 15, 2009　　　　　　　　　　　　　　s/William M. Catoe
Greenville, South Carolina　　　　　　　　　United States Magistrate Judge